# STATE OF MICHIGAN

# COURT OF APPEALS

DEREK M. BARRESI,

        Plaintiff,

v

BARBARA BARRESI,

        Defendant-Appellant,

v

MICHAEL SLINGERLAND,

        Appellee.

UNPUBLISHED
May 21, 2015

No. 319739
Kent Circuit Court
LC No. 04-007185-DM

Before: BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

In this divorce action, defendant Barbara Barresi appeals as of right the trial court's October 28, 2013 order denying her motion for an order requiring that Michael Slingerland of All Points Bail Bonds, as surety of a $3,500 bond posted for her ex-husband, plaintiff Derek M. Barresi, make available the $3,500 bond for the payment of fines, costs, and her attorney fees. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant and plaintiff were divorced on November 20, 2006. On April 18, 2012, it was revealed that in 2007 plaintiff had closed an investment account that was to be held by the parties for their child's benefit. On September 17, 2012, the trial court entered an order requiring plaintiff to deposit $8,776.15 into a bank account established for the minor child's benefit. The trial court also ordered that plaintiff pay defendant $1,814 in attorney fees.

After a previous show cause order and a bench warrant failed to secure plaintiff's compliance with the trial court's order, defendant once again moved the trial court for a show cause order on March 22, 2013, based on an allegation that plaintiff had failed to deposit the $8,776.15 into an account for the benefit of the minor child. On March 29, 2013, plaintiff failed to appear for the show cause hearing, and the trial court issued a bench warrant for his arrest. On April 8, 2013, the trial court ordered that plaintiff's bond be set "in the amount of $3,500.00

-1-

cash/surety and may be used for fines, costs and/or attorney fees." After Slingerland executed a $3,500 surety bond on plaintiff's behalf, the trial court cancelled the bench warrant for plaintiff's arrest.

Regarding the conditions of the bond executed by Slingerland, plaintiff—who was listed as the "defendant" for the purpose of the bond—was required to personally appear before the trial court as directed by the court, to abide by the trial court's judgment, to not leave Michigan without permission of the trial court, to not commit a crime, and to notify the trial court of a change of address. The bond contained no mention of the $3,500 bond amount being available for the payment of attorney fees, fines, or costs. Slingerland attached a power of attorney to the bond he signed. The power of attorney was issued by the "Allegheny Casualty Company" and indicated that Slingerland had authority to act on its behalf as a surety for a bond amount of up to $6,000. By his signature on the power of attorney, Slingerland indicated that he was executing a bond in the amount of $3,500. However, the power of attorney provided that: "Authority of such Attorney-in-Fact [Slingerland, in this case] is limited to the execution of appearance bonds and cannot be construed to guarantee defendant's further lawful conduct, adherence to travel limitation, fines, restitution, payments or penalties, or any other condition imposed by a court not specifically related to court appearances."

On April 16, 2013, the trial court held a show cause hearing concerning defendant's March 22, 2013 motion for a show cause order related to plaintiff's failure to deposit $8,776.15 into an account for the benefit of the minor child as ordered by the trial court. Plaintiff appeared for that hearing. The trial court ultimately found that plaintiff was in contempt of court because of his failure to comply with its previous order.

On June 14, 2013, defendant moved the trial court for an order requiring Slingerland to make the funds of the $3,500 bond available "for payment of 'fines, costs and/or attorney fees,' all in accordance with the conditions of the order setting the bond entered on or about April 8, 2013." The trial court held a hearing on the motion, at which Slingerland testified that he believed the bond only guaranteed that plaintiff would appear before the court. He testified that he never saw the April 8, 2013 order, which stated that the bond could be used for "fines, costs and/or attorney fees." Slingerland explained that, in his mind, the bond was only for securing plaintiff's appearance. Defendant argued that Slingerland had subjected himself to the jurisdiction of the trial court by issuing the bond and he should be bound by the trial court's order that the bond be used for fines, costs, and attorney fees.

The trial court recognized that it had jurisdiction over Slingerland as the surety of the $3,500 bond pursuant to MCR 3.604. Nevertheless, it ruled that the $3,500 bond could not be used for defendant's attorney fees. In so ruling, the trial court found that Slingerland never saw the order indicating that the bond could be used for attorney fees. It also found significant the language of the power of attorney for the bond, which indicated that the authority of the attorney-in-fact—i.e., Slingerland—was limited, and did not guarantee plaintiff's payment of attorney fees. Because it found that Slingerland did not know about the conditions imposed in the order, and because the bond and power-of-attorney provision did not mention attorney fees, the trial court denied defendant's motion. Defendant now appeals as of right.

II. ANALYSIS

-2-

This issue involves the trial court's interpretation and application of MCR 3.604, which we review de novo. *Haliw v Sterling Heights*, 471 Mich 700, 704; 691 NW2d 753 (2005).

MCR 3.604(B) provides that "[a] surety on a bond or undertaking given under the Michigan Court Rules or the Revised Judicature Act submits to the jurisdiction of the court and consents that further proceedings affecting the surety's liability on the bond or undertaking may be conducted under this rule." Defendant argues that pursuant to MCR 3.604(B), Slingerland submitted to the jurisdiction of the trial court. We agree; however, that is where our agreement with defendant ends. Defendant notes that in *Palmer v Oakley*, 2 Doug 433, 486 (Mich, 1847), the Michigan Supreme Court defined "jurisdiction" as follows:

> We have been referred by counsel to the case of the *United States v Arredondo*, [31 US 691, 709; 8 L Ed 547 (1832)], for a definition of the word jurisdiction. Mr. Justice Baldwin, in that case, says: "The power to hear and determine a cause is jurisdiction; it is '*coram judice*,' whenever a case is presented which brings this power into action; if the petitioner states such a case in his petition, that, on demurrer, the court could render judgment in his favor, it is an undoubted case of jurisdiction."

Based on *Palmer*, defendant asserts that "[e]ssentially, being subject to the jurisdiction of the court means that he or she is to comply with orders of the Court or be sanctioned for failure to comply." Defendant argues that Slingerland should be required to bring the $3,500 bond into compliance with the trial court's April 8, 2013 order and make the $3,500 bond available for the payment of fines, costs and defendant's attorney fees.

However, the principle of law espoused in *Palmer*—that jurisdiction is the "power to hear and determine a cause"—simply restates the nature of courts' subject-matter jurisdiction. See *In re Wayne Co Treasurer Petition*, 265 Mich App 285, 291; 698 NW2d 879 (2005) (stating that "[i]n general, subject-matter jurisdiction has been defined as a court's power to hear and determine a cause or matter"). Defendant's recitation of the definition of subject-matter jurisdiction provides no legal support for the proposition that the proper remedy where a bond does not conform with a court order is for the trial court to order the surety to bring the bond into compliance with the court order. Nor does defendant provide any other authority for that proposition.

Moreover, the plain language of MCR 3.604 does not support defendant's position. Notably, MCR 3.604(I)(1) provides that:

> In an action in which a bond or other security has been posted, judgment may be entered directly against the surety or the security on motion without the necessity of an independent action on a showing that the condition has occurred giving rise to the liability on the bond or to the forfeiture of the security.

In *Bruwer v Oaks (On Remand)*, 218 Mich App 392, 397; 554 NW2d 345 (1996), we construed MCR 3.604(I)(1) and stated that the rule "provides that, without the necessity of a separate action, a judgment may be entered against a bond or security if the moving party demonstrates that the conditions of the bond or security have been triggered." The conditions of a bond are

found in the provisions of the bond itself. See *id*. at 397-398. In order to enter judgment against the surety, a court must look to the liability stated in the bond. See *id*. at 398. Here, the record does not support that any of the conditions listed on plaintiff's bond were violated. Indeed, the bond only guaranteed plaintiff's appearance. Although the trial court's order required that the bond be available for the payment of attorney fees, the bond itself contained no such provision. And, as the trial court found, there is no indication that Slingerland ever knew about the order when he drafted the bond. Defendant, as the moving party, was required to "demonstrate[] that the conditions of the bond or security have been triggered." *Id.* at 397. On the record before us, she cannot do so. Defendant was, therefore, not entitled to a judgment against the $3,500 bond pursuant to MCR 3.604(I)(1). *Id.* at 397.[1]

Affirmed.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Douglas B. Shapiro

---

[1] In addition, any argument by defendant that the bond did not comply with the trial court's April 8, 2013 order is waived. See MCR 3.604(E) (providing a 7-day period for the party for whose benefit the bond was given to object to the surety). Here, the bond was filed on April 8, 2013, the same day the order was entered. The first time that defendant—the party for whose benefit the bond was given—mentioned the bond was when she sought enforcement thereof on June 14, 2013; at this time, defendant made no mention of any perceived deficiencies in the bond. The first time defendant argued that the bond did not comply with the trial court's order was at an October 9, 2013 hearing. Defendant has made no effort to argue that this objection was timely. Accordingly, we find that defendant waived any claim that the bond did not comply with the trial court's order. See MCR 3.604(E).